IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHARLES V. HUFFMAN, JR.,       )
and BETTY J. HUFFMAN,          )
individually as Personal       )
Representatives of the Estate of )
Donald Dale Huffman, Sr.       )
(Deceased), et al.,            )
                               )
            Plaintiffs,        )
                               )
v.                             )        No. CIV-05-856-L
                               )
AVALON CORRECTIONAL            )
SERVICES, INC., a Nevada       )
corporation, et al.,           )
                               )
            Defendants.        )

# O R D E R

This action arises out of the death of Donald Dale Huffman, Sr. while he was

in the custody of the Oklahoma Department of Correction.  At the time of his death,

Huffman was residing at the Carver Center Halfway House, which was operated by

defendant Avalon Correctional Services, Inc. ("Avalon").  Plaintiffs, individually and

as personal representatives of Huffman's estate, filed this action on July 27, 2005,

approximately fifteen months after Huffman's death on April 29, 2004.  The original

complaint named Avalon and the State of Oklahoma, ex rel. the Oklahoma

Department of Corrections, as defendants.  On August 23, 2005, plaintiffs filed an

amended complaint against the same defendants.  Amended Complaint (Doc. No.

9).  After defendants filed motions to dismiss, plaintiffs sought leave to file a second

amended complaint, which the court granted.  Plaintiffs filed their second amended complaint on September 9, 2005.  The second amended asserted federal claims pursuant to 42 U.S.C. § 1983 for alleged violations of Huffman's Eighth and Fourteenth Amendment rights; in addition, plaintiffs sought damages based on a state law negligence claim.  In addition to naming Avalon as a defendant, the second amended complaint asserted claims against Ron Ward, individually and as former director of the Oklahoma Department of Corrections.  Defendants again filed motions to dismiss.  On March 27, 2006, the court granted Ward's motion, but denied Avalon's.  Thereafter, plaintiffs sought leave to file a third amended complaint.

The third amended complaint, which was filed on April 21, 2006, named Avalon and five individuals as defendants.  The individual defendants filed motions for summary judgment on June 22, 2006.  Pursuant to Fed. R. Civ. P. 56(f), plaintiffs requested additional time to respond to the motions so they could conduct discovery. On September 25, 2006, plaintiffs filed a stipulation dismissing this action with prejudice as to individual defendants Justin Jones, Reggie Hines, Ruby Jones-Cooper, and Ade Ipaye (Doc. No. 89).  The summary judgment motion presented by those defendants (Doc. No. 68) is therefore moot.  Plaintiffs responded to the motion for summary judgment filed by defendant Pat Foster, and it is now at issue.

Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Any doubt as to the

2

existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.   In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).   Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that Oklahoma City Community Corrections ("OKCCC") is a division within the Oklahoma Department of Corrections.  OKCCC provides medical care to inmates housed at the Carver Center.  Some time before 8:00 a.m. on the morning of April 29, 2004, Huffman arrived at the Carver Center

medical office.[1]  Huffman, who was lying on a bench outside the medical office, was pale and turning blue.  Affidavit of Frank E. Purvey at ¶ 32.  He was unable to talk and responded to questions by nodding or shaking his head.  Id.; Exhibit 13 to Plaintiffs' Response.  At approximately 11:00 a.m., Carver Center employee Peggy Purdue attempted to contact OKCCC medical services by telephone.  Exhibit 12 to Plaintiffs' Response.  At some point thereafter, Purdue spoke with Foster who asked her to question Huffman.  Id. at 2.  At Foster's request, Purdue asked Huffman if he was taking any medication or if he had an upper respiratory infection; Huffman responded in the negative.  Id.  Purdue informed Foster that Huffman's "skin was discolored", and Foster told Purdue to transfer Huffman to OKCCC.  Id.; Deposition of Patricia Margaret Foster at 20, 56.  According to the Incident Report completed by Purdue, Huffman was transported to OKCCC at 11:08 a.m., more than three hours after he arrived at the medical office.  Exhibit 12 to Plaintiffs' Response at 2.

Huffman arrived at OKCCC at approximately 11:25 a.m.  Exhibit 2 to Plaintiffs' Response.  When he arrived, Foster took his vital signs and discovered he had no blood pressure or pulse.  Deposition of Patricia Margaret Foster at 30.  Foster called 911 to request an ambulance.  The ambulance arrived at OKCCC at approximately

---

[1]It is not clear when Huffman appeared at the medical office.  The Emergency Department Report reflects he arrived at the Carver Center medical office "at about 9:45 this morning."  Exhibit 16 to Plaintiffs' Response to Motion for Summary Judgment of Defendant, Pat Foster, R.N. at 1 [hereinafter cited as "Plaintiffs' Response"].  Frank E. Purvey, a fellow inmate, reports seeing Huffman at the medical office "sometime around 8:00 a.m."  Affidavit of Frank E. Purvey at ¶ 26.  As the court must view the facts in the light most favorable to plaintiffs, the court accepts that Huffman was present at the medical office no later than 8:00 a.m.

11:35 a.m. and transported Huffman to a local hospital at 12:06 p.m.  Exhibit 2 to Plaintiffs' Response; Exhibit 15 to Plaintiffs' Response at 1-2.  Huffman was pronounced dead at 3:13 p.m.; the cause of death was "overwhelming sepsis". Exhibit 16 to Plaintiffs' Response at 2.

In the Third Amended Complaint, plaintiffs allege defendants violated Huffman's Eighth and Fourteenth Amendment rights by requiring him to live in unsanitary conditions and refusing to provide necessary medical care.  They contend these same actions also constitute negligence and were the proximate cause of Huffman's death.  With respect to Foster, plaintiffs' failure to provide medical care claim is premised on allegations that she delayed treatment by refusing to authorize Huffman's transport to a hospital in an ambulance and instead directing he be transported to OKCCC.  They allege "[a]lthough Nurse Foster ultimately called an ambulance from OCCC, another hour was lost before Mr. Huffman was finally delivered to the hospital."[2]  Third Amended Complaint at ¶ 39.

In her motion for summary judgment, Foster contends she is entitled to qualified immunity on plaintiffs' federal claims.  When a defendant raises the defense of qualified immunity at the summary judgment stage,

> the burden shifts to the plaintiff, and the plaintiff must first establish that the defendant's actions violated a constitutional or statutory right.  If a favorable view of the facts alleged show[s] the violation of a constitutional right,

---

[2]This allegation is consistent with the time line reflected above, which shows Foster was contacted at approximately 11:00 a.m. and Huffman was transported by ambulance at 12:06 p.m.

> the next, sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct.  When the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity.

Smith v. Cochran, 339 F.3d 1205, 1211 (10th Cir. 2003).  In order to sustain their burden, plaintiffs may not rest on the allegations of their complaint.  Rather, they have "an obligation to 'present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment.'  The plaintiff must go beyond the pleadings and . . . set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."  Serna v. Colorado Dep't of Corrections, 455 F.3d 1146, 1151 (10th Cir. 2006) (citations omitted).

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).

> The test for a "deliberate indifference" claim under the Eighth Amendment has "both an objective and a subjective component."  The objective component of the test is met if the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause.  The subjective component "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  Moreover, to overcome the qualified immunity defense, the prisoner "must demonstrate that the defendant's actions violated a specific constitutional right," and "then show that the constitutional right was 'clearly established' prior to the challenged official action."

Kikumura v. Osagie, 461 F.3d 1269, 1291 (10th Cir. 2006).

As plaintiffs' Eighth Amendment claim is premised on delay in medical treatment, plaintiffs must demonstrate "that the delay resulted in substantial harm." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation omitted).  In their response, plaintiffs claim Foster refused to allow Carver Center employees to contact an ambulance, which "wasted a precious hour when Donald Huffman was dying."  Plaintiffs' Response at 10.  Plaintiffs, however, have presented no admissible evidence that this in fact occurred;[3] rather, the only evidence of record is Foster's unequivocal statement that calling an ambulance was never discussed. Deposition of Patricia Margaret Foster at 66.  Moreover, the record reflects that the majority of the delay occurred at the Carver Center before Foster was contacted.[4] Plaintiffs offer no evidence that Foster contributed to or caused the Carver Center delay.[5]  The earliest attempt to contact Foster was at 11:00 a.m.; Foster called 911

----

[3]The only evidence offered by plaintiffs in support of this statement is an unsworn and unverified "Timeline".  See Exhibit 9 to Plaintiffs' Response at 2.  Although the Timeline contains quotes – often from unnamed sources – plaintiffs offer no affidavits or depositions to support the statements made.  See Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006).  Furthermore, the statement that Foster "refused an ambulance" is not attributed to anyone and none of the incident reports also cited by plaintiffs support the statement.

[4]Even plaintiffs' timeline – which does not constitute admissible evidence – shows no attempt by Carver Center employees to contact Foster until 11:01 a.m.  Foster authorized Huffman's transport to OKCCC shortly thereafter.  The record reflects that within minutes of his arrival at OKCCC, Foster called 911 to request an ambulance.

[5]In their initial response, plaintiffs claimed "[b]y demeaning and talking down to Avalon employees who were seeking medical care for inmates, Nurse Foster created an atmosphere where Carver Center staff were afraid to act on their own initiative, absent Foster's approval."  Plaintiffs' Response at 5.  In support of this statement, plaintiffs attached an unsworn Serious Incident Report concerning the March 2001 death of another Carver Center inmate, Lowell Lee.  Exhibit 3 to

7

and requested an ambulance less than 35 minutes later, as ambulance arrived at 11:35 a.m.   Nonetheless, giving plaintiffs the benefit of the doubt, the court will assume for purposes of ruling on Foster's motion that plaintiffs can establish the objective component of their Eighth Amendment claim.

Plaintiffs cannot, however, establish the subjective component of the claim.

> The subjective component of a deliberate indifference claim requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have perceived but did not."  To show "the requisite deliberate indifference," [plaintiffs] "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"

Kikumura, 461 F.3d at 1293 (citations omitted).   The only evidence of record establishes that, when contacted, Foster made a good faith effort to assess Huffman's condition by having Purdue ask assessment questions.   Based on the answers she received and Purdue's description of Huffman's appearance, Foster directed that Huffman be transported to the medical facility at OKCCC.   Within minutes of Huffman's arrival at OKCCC, Foster examined Huffman and called for an ambulance.   There is no evidence that Foster knew Huffman faced a substantial risk

_____

Plaintiffs' Response.  In their amended response, however, plaintiffs concede Foster was not the medical duty nurse who refused requests for medical care for Lee.  Plaintiffs' Motion to Amend Response to Motion for Summary Judgment at 3, ¶ 8.  The undisputed evidence reveals that Foster was not involved in Lee's death.  *See* Exhibit 1 to Reply Brief of Defendant Pat Foster in Response to Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment at ¶¶ 4-6; Exhibit 2 to Reply Brief at ¶¶ 8, 10, 12.

of harm prior to the time she was able to physically examine him.  When she did

examine him, far from disregarding the risk, she recognized it and took "reasonable

measures to abate it."  Id.  Therefore, plaintiffs cannot establish an essential element

of their Eighth Amendment medical delay claim against Foster.[6]  She is therefore

entitled to qualified immunity.  Likewise, Foster is entitled to qualified immunity with

respect to plaintiffs' Fourteenth Amendment claim as that claim is subsumed in their

Eighth Amendment claim and subject to the same analysis.  *See* Oxendine, 241

F.3d at 1275.  *See also* Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1243 (10th

Cir. 2003).

The court also finds Foster is entitled to judgment in her favor with respect to

plaintiffs' state law negligence claim.  Under the Oklahoma Governmental Tort

Claims Act, governmental employees are immune from suit for torts they commit

while acting within the scope of their employment.  51 O.S. § 152.1(A).  Plaintiffs

argue Foster is not entitled to immunity under the Act "because she acted wilfully,

wantonly, and in reckless disregard for Plaintiffs' rights."  Plaintiffs' Response at 18.

This argument, however, assumes that plaintiffs can sustain their Eighth Amendment

claim that Foster was deliberately indifferent to Huffman's serious medical needs,

which the court has found they cannot do.  Plaintiffs have presented no evidence

---

[6]Foster also seeks summary judgment on plaintiffs' first claim for relief, which alleges a
violation of the Eighth Amendment based on the unsanitary living conditions at the Carver Center.
Foster argues she did not personally participate in bringing about the alleged unsanitary living
conditions at the Carver Center.  Plaintiffs did not address this argument in their response.  To the
extent plaintiffs' first claim was directed at Foster, she is entitled to dismissal of that claim for lack
of personal participation.  *See* Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996).

that Foster acted with malice or without good faith; she is thus entitled to the protection afforded by the Governmental Tort Claims Act.  In light of this ruling, the court need not address Foster's statute of limitations argument.

In sum, Foster's Motion for Summary Judgment (Doc. No. 67) is GRANTED.

It is so ordered this 7th day of November, 2006.

*Tim Leonard*

TIM LEONARD
United States District Judge